| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **26 MAG 701** |
| UNITED STATES OF AMERICA<br><br>         v.<br><br>EMIR BALAT and<br>IBRAHIM KAYUMI,<br><br>                    Defendants. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 842, 844, 2332a, 2339B, and 2, and 26 U.S.C. §§ 5861 and 5871<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

      JENNIFER GIOIA, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Attempted Provision of Material Support and Resources to a Designated Foreign Terrorist Organization)

      1.      In or about March 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, knowingly attempted to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel, to wit, themselves, and services, to a foreign terrorist organization, to wit, the Islamic State of Iraq and al-Sham ("ISIS"), which at all relevant times has been designated by the U.S. Secretary of State as a foreign terrorist organization, pursuant to Section 219 of the Immigration and Nationality Act ("INA"), and is currently designated as such as of the date of the filing of this Complaint, knowing that ISIS was a designated foreign terrorist organization (as defined in Title 18, United States Code, Section 2339(B)(g)(6)), that ISIS engages in and has engaged in terrorist activity (as defined in Section 212(a)(3)(B) of the INA), and that ISIS engages in and has engaged in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

      (Title 18, United States Code, Sections 2339B and 2.)

## COUNT TWO
### (Use of a Weapon of Mass Destruction)

      2.      On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, acting without lawful authority, knowingly used, threatened, and attempted to use, a weapon of mass destruction—namely, a destructive device as defined by 18 U.S.C. § 921—against persons and property within the United States, and (i) the mail and facilities of interstate and foreign commerce were used in furtherance of the offense, (ii) such property was used in an activity that affects interstate and foreign

commerce, (iii) the perpetrators traveled in interstate and foreign commerce in furtherance of the offense, and (iv) the offense and the results of the offense affected interstate and foreign commerce, to wit, BALAT and KAYUMI possessed and attempted to detonate an improvised explosive device in the vicinity of East End Ave & East 88th Street in New York, New York, after having traveled to that location from outside of New York State.

(Title 18, United States Code, Sections 2332a(a)(2) and 2.)

## COUNT THREE
### (Transportation of Explosive Materials)

3.     On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, not being licensees or permittees under the provisions of Chapter 40 of Title 18 of the United States Code, knowingly transported, shipped, caused to be transported, and received, explosive materials.

(Title 18, United States Code, Sections 842(a)(3)(A) and 844(a).)

## COUNT FOUR
### (Interstate Transportation and Receipt of Explosives)

4.     On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, knowingly transported and received, and attempted to transport and receive, in interstate and foreign commerce, an explosive with the knowledge and intent that it would be used to kill, injure, and intimidate any individual and unlawfully to damage and destroy a building, vehicle, and other real and personal property, to wit, BALAT and KAYUMI transported improvised explosive devices in interstate commerce, and attempted to detonate and throw into a crowd an improvised explosive device in the vicinity of East End Ave & East 88th Street in New York, New York.

(Title 18, United States Code, Sections 844(d) and 2.)

## COUNT FIVE
### (Unlawful Possession of Destructive Devices)

5.     On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, unlawfully and knowingly possessed a firearm, namely, a combination of parts designed and intended for use in converting devices into destructive devices, as described in Title 26, United States Code, Section 5845(a)(8) and (f), not registered to the defendants in the National Firearms Registration and Transfer Record.

(Title 26, United States Code, Sections 5861(d) and 5871;
Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.     I am a Special Agent with the FBI, and I am assigned to a counterterrorism squad with the New York Joint Terrorism Task Force. I have been personally involved in the

investigation of this matter. This affidavit is based in part upon my training and experience, my involvement in this and other investigations, my conversations with law enforcement agents and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Any errors in grammar, spelling, and punctuation in language quoted below are how those errors appeared in the underlying documents and communications.

## Summary of Investigation

7.     On or about March 7, 2026, EMIR BALAT and IBRAHIM KAYUMI, the defendants, attempted to detonate two apparent explosive devices in the vicinity of Gracie Mansion, in Manhattan, New York, during a protest and counter-protest in the area. Preliminary results of testing of one of the devices indicates that it contained a quantity of triacetone triperoxide ("TATP"), a highly volatile explosive material used in multiple terrorist attacks over the last decade. After the New York City Police Department ("NYPD") arrested them at the scene, BALAT and KAYUMI both made statements referring to ISIS. For example, as KAYUMI was being placed inside an NYPD vehicle to be transported, an individual from the surrounding crowd yelled to KAYUMI and asked, in substance and in part, why he had done this. KAYUMI responded, in part and as captured on NYPD body-worn camera footage, "ISIS." BALAT and KAYUMI also referred to ISIS in recorded post-arrest statements they made after receiving and waiving their *Miranda* rights. More specifically, BALAT wrote on a piece of paper that he "pledge[d] [] allegience [sic] to the Islamic State" and KAYUMI stated, in substance and in part, that he was affiliated with ISIS; watched ISIS propaganda on his phone; and was partly inspired to carry out his actions that day by ISIS. BALAT additionally stated that they wanted to carry out an attack bigger than the Boston Marathon bombing, which BALAT noted caused only "three deaths."

## Background on ISIS

8.     Based on my training and experience as a counterterrorism agent of the FBI, my involvement in this investigation, including my review of open-source materials and foreign and domestic law enforcement reports, and my conversations with other law enforcement agents, I have learned, among other things, the following:

  a.     On or about October 15, 2004, the United States Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam 'at al Tawid wa' al-Jahid, as a foreign terrorist organization ("FTO") under Section 219 of the INA and as a Specially Designated Global Terrorist ("SDGT") entity under Section l(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a SDGT entity under Section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary of State also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham ("ISIS"—which, as explained above, is how the FTO will be referenced herein), The Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furquan

3

Establishment for Media Production. On or about September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. On or about March 22, 2019, the U.S. Secretary of State added the following aliases to the FTO and SDGT listings: Amaq News Agency, Al Hayat Media Center, and Al Hayat. To date, ISIS remains a designated FTO.

   b. Based on my participation in this investigation and my review of open-source reporting, I know, among other things, that on or about September 21, 2014, then-ISIS spokesperson Abu Muhammad al-Adnani ("Adnani") issued a recorded statement calling for attacks against citizens—civilian or military—of the countries participating in the United States-led coalition against ISIS. Adnani specifically called for suicide bombings, shootings, and vehicle attacks.

   c. ISIS members and associates make and have made public statements and issued public declarations, which, among other things, (a) proclaimed and acknowledged that acts of violence had been committed by ISIS; (b) threatened future acts of violence if ISIS's demands were not met; and (c) were intended to promote and foster the prestige and standing of ISIS. ISIS has claimed responsibility for the following terrorist attacks, among others: (i) on or about November 13 and 14, 2015, a group of attackers carried out attacks in Paris, France, which killed approximately 130 people; (ii) on or about March 22, 2016, a group of attackers carried out bombings in Brussels, Belgium, which killed at least 32 people; (iii) on or about July 14, 2016, an attacker used a truck to run over civilians in Nice, France, killing more than 80 people and injuring more than 300; (iv) on or about October 31, 2017, an attacker, later sentenced to multiple life sentences after being convicted at trial in the Southern District of New York, used a truck to run over civilians in Manhattan, New York, killing eight people and injuring several others; (v) on or about January 3, 2024, two attackers carried out bombings in Kerman, Iran, killing at least 94 people and wounding many more; and (vi) on or about March 22, 2024, a group of assailants stormed a concert hall in Moscow, Russia, killing at least 60 people and injuring over 145 others.

   d. To gain support, ISIS, like many other terrorist organizations, spreads its message using social media, Internet platforms, and email. Using these platforms, ISIS has disseminated a wide variety of recruiting materials and propaganda through social media, which includes photographs and videos depicting ISIS activities, including beheadings and other atrocities, as well as audio and video lectures by members of ISIS and members of other Islamic extremist organizations. Among other internet and social media platforms, ISIS has popularized the use of end-to-end encrypted communication services and applications as a means of recruiting, communicating with, and disseminating terrorist training materials and propaganda to its members and supporters.

   e. The U.S. State Department has reported that, among other things, ISIS has committed systematic abuses of human rights and violations of international law, including indiscriminate killing and deliberate targeting of civilians, mass executions and extrajudicial killings, persecution of individuals and communities on the basis of their religion, nationality, or ethnicity, kidnapping of civilians, forced displacement of various communities and minority groups, and killing and maiming of children, rape, and other forms of sexual violence. According to the U.S. State Department, ISIS has recruited foreign fighters from across the globe and leveraged technology to spread its violent extremist ideology and for incitement to commit terrorist acts.

**Attempted Bombing Near Gracie Mansion**

9.      Based on my training and experience as a counterterrorism agent of the FBI, my involvement in this investigation, including my review of open-source materials and foreign and domestic law enforcement reports, and my conversations with other law enforcement agents, I have learned, among other things, the following:

a.      On or about March 7, 2026, a protest called "Stop the Islamic Takeover of New York City, Stop New York City Public Muslim Prayer" and a counter-protest called "Run Nazis Out of New York City" were both held at overlapping times outside of Gracie Mansion in Manhattan, New York. Gracie Mansion is the official residence of the Mayor of New York City.

b.      At the protest, at approximately 12:15 p.m., an individual later identified as EMIR BALAT, the defendant,[1] ignited and threw an item ("Device-1") toward the area where the protesters were gathered. BALAT is pictured below holding Device-1 from two angles:

 

c.      Immediately after throwing Device-1, BALAT ran to another location down the block and received a second item ("Device-2," and collectively with Device-1, the "Devices")

---

[1] At the time of his arrest, BALAT was in possession of a Turkish government identification card with the name "Emir Balat," and a Pennsylvania driver's license with BALAT's photograph and the name "Emir Balat."

from an individual later identified as IBRAHIM KAYUMI, the defendant.[2] Pictured below are BALAT (left) and KAYUMI (right) in the moment before the hand-off of Device-2.



        d.      After apparently igniting Device-2, BALAT dropped Device-2 near where several NYPD officers were standing, ran away from the NYPD officers, and jumped over a barricade. He was tackled and arrested by NYPD officers shortly thereafter. Pictured below are BALAT mid-flight and Device-2 hitting the ground. KAYUMI was also arrested on scene.

---

[2] After his arrest, KAYUMI stated to law enforcement officers that his first name is "Ibrahim," and U.S. Customs and Border Protection facial recognition databases subsequently matched a photograph of KAYUMI to "Ibrahim Qays Kayumi."



  e. Shortly after arresting BALAT and KAYUMI, NYPD officers placed BALAT and KAYUMI in separate NYPD vehicles for transport to an NYPD precinct.

### BALAT's Statements to Law Enforcement

  f. In the NYPD vehicle en route to the NYPD precinct, BALAT, without being questioned by the NYPD officers transporting him, made the following spontaneous utterances, in part and as captured on the transporting NYPD officers' body-worn camera footage: "this isn't a religion that just stands when people talk about the blessed name of the prophet . . . We take action! We take action!"; and "if I didn't do it someone else will come and do it."

  g. After arriving at the precinct and being advised of, and waiving, his *Miranda* rights, BALAT requested a piece of paper and, after being given a paper and pen, wrote the following: "All praise is due to Allah lord of all worlds! I pledge my allegience [sic] to the Islamic State. Die in your rage yu [sic] kuffar! Emir B." Based on my training and experience, I know that "kuffar" is an Arabic term that refers to "non-believers" or "infidels," and that "Die in your rage" is a slogan used by ISIS and based on a verse in the Quran.

  h. Law enforcement officers later asked BALAT if he was familiar with the Boston Marathon bombing, and if that was what BALAT had hoped to accomplish. BALAT responded: "No, even bigger. It was only three deaths."[3]

---

[3] Based on my training and experience, I know that on or about April 15, 2013, two individuals planted two homemade pressure cooker bombs that detonated near the finish line to the Boston Marathon. Three people were killed and hundreds injured in the terrorist attack.

7

### KAYUMI's Statements to Law Enforcement

i. After KAYUMI was arrested, and as he was being placed inside an NYPD vehicle to be transported from the scene to an NYPD precinct, an individual from the surrounding crowd yelled to KAYUMI and asked, in substance and in part, why KAYUMI had done this. KAYUMI responded, in part and as captured on NYPD body-worn camera footage, "ISIS."

j. At the NYPD precinct, KAYUMI was advised of, and waived, his *Miranda* rights. In response to a question from law enforcement about whether he was affiliated with ISIS, KAYUMI indicated that he was. He further stated, in substance and part, that: (i) he has watched ISIS propaganda on his phone; (ii) his actions that day were partly inspired by ISIS; (iii) he did not feel comfortable holding the Devices earlier that day; and (iv) he would not feel comfortable if the Devices were in the interrogation room with him.

### Examination of the Devices

k. After BALAT and KAYUMI were taken to an NYPD precinct, NYPD officers secured the Devices and transferred them into the custody of the FBI. An FBI Special Agent Bomb Technician ("SABT") then conducted a preliminary examination of the Devices and determined that they were each approximately the size of a mason jar; that they each had an attached fuse; and that they each had nuts and bolts attached to the exterior, surrounded by duct tape.

l. A preliminary analysis of a white substance contained in Device-1, which BALAT threw into the crowd of protesters, showed that the substance tested positive for TATP, a highly sensitive primary explosive. Based on my training and experience, I know that TATP is colloquially known as the "Mother of Satan"; is extremely sensitive to impact, friction, and heat; and has been used in multiple terrorist attacks over the last decade.

m. FBI's preliminary assessment is that Device-1 constitutes a destructive device, as defined in 18 U.S.C. § 921(a)(4)(A). Pictured below are the contents inside Device-1 after Device-1 was opened by law enforcement.




   n. Based on law enforcement agents' review of the Bureau of Alcohol, Tobacco, and Firearms' Federal Licensing System, I have learned that there are no firearms, including destructive devices, that are registered to BALAT or KAYUMI in the National Firearms Registration and Transfer Record.

### Travel from Pennsylvania

   o. At the time of his arrest, BALAT was carrying a Pennsylvania driver's license with his photograph, his name, and a Pennsylvania address. After the arrest, several blocks south of Gracie Mansion, law enforcement officers identified a parked vehicle ("Vehicle-1") with a New Jersey license plate registered to BALAT's family member ("License Plate"). Data from an automated license plate reader shows that the License Plate was captured moving east, from New Jersey, toward upper Manhattan on the George Washington Bridge Upper Level Northbound on or about March 7, 2026 at approximately 11:36 a.m., that is, less than an hour before BALAT threw Device-1 into the crowd of protestors.

   p. From inside Vehicle-1, law enforcement agents recovered a coiled green material consistent in appearance with hobby fuse, an empty metal can of the same approximate dimensions and appearance as the can recovered from inside Device-1, and a notebook containing handwritten notes.

   q. One page of the notebook contains the note "TATP explosive"; another page contains a list of chemical ingredients, including "hydrogen peroxide," "sulfuric acid," and "acetone"; and a third page contains a list of components and quantities, such as "aluminum can x6," and "a box of bolts ect [sic] 2x." Based on my training and experience, I believe that these notes are a reference to materials that could be used to build explosive devices like the one that BALAT and KAYUMI used on or about March 7, 2026.

   r. On or about March 7, 2026, KAYUMI's mother filed a missing person report that stated that she last saw "Ibrahim Kayumi" at their residence in Pennsylvania at approximately 10:30 a.m. earlier that day.

WHEREFORE, I respectfully request that warrants be issued for the arrests of EMIR BALAT and IBRAHIM KAYUMI, the defendants, and that they be imprisoned or bailed, as the case may be.

/s/ Jennifer Gioia (by GS w/ permission)
JENNIFER GIOIA
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1,
this 9th day of March, 2026.

_____
THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York